## JOHN LLOYD v. ALTOONA CITY.

APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS OF BLAIR COUNTY.

Argued April 22, 1890—Decided May 5, 1890.

1. When a municipal corporation shall issue new bonds with which to pay or redeem an existing bonded indebtedness, under the act of April 14, 1881, P. L. 10, the holders of the old bonds, first having the right to exchange for the new ones, may not be required to receive the latter at a premium they may command in the market.
2. It seems, that where, in an action brought before the passage of the Procedure Act of May 25, 1887, P. L. 271, a declaration in the common

## Statement of Facts.

counts is filed after the date of said act, but the defendant goes to trial without demanding particulars, recovery will not be defeated by the failure to file the statement of claim required by said act.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS and MITCHELL, JJ.

No. 41 January Term 1890, Sup. Ct.; court below, No. 157 October Term 1886, C. P.

On October 4, 1886, an appeal was filed by the defendant from the judgment of the city recorder in favor of John Lloyd against the city of Altoona, for $323.75. On October 15, 1887, a common-law narr was filed by the plaintiff declaring for the amount of said judgment in the common counts. The defendant pleaded non-assumpsit.

At the trial on March 22, 1888, it was made to appear that on May 26, 1886, a city ordinance was enacted reciting an ordinance passed on December 23, 1885, which provided for the payment or redemption of the permanent improvement bonds and water bonds of the city, outstanding to the amount of $409,000, and directed advertisement of notice that such payment or redemption would be made on presentation thereof on July 1, 1886, at the office of the city treasurer, and that interest on said bonds would cease on that date. The said ordinance of May 26, 1886, recited, further, that such notice had been duly advertised, and then enacted that in pursuance of the act of April 14, 1881, P. L. 10, the city should issue its bonds, to be known as the Funded Loan of the City of Altoona, to the amount of $409,000, bearing interest at 4 per cent per annum payable semi-annually; the said bonds to conform in all respects with the provisions of said act, and the proceeds of the whole of said loan to be applied to the payment of the maturing bonds. A notice was at once published notifying the holders of the old bonds that, in order to secure the rights accorded them under the statute, they were to notify the finance committee of councils, on or before June 10, 1886, of their acceptance of the new 4 per cent loan. On June 7, 1886, John Lloyd notified the said committee in writing that he represented the holders of $103,600 of the old bonds, and that he accepted the new four per cent loan and desired to exchange for bonds thereof to a like amount. On June 11, 1886, a reso-

Statement of Facts.

lution was passed by councils accepting the bid of one Gilbough of New York, and directing the finance committee to deliver to said Gilbough, at his bid of $100\frac{5}{16}$, all said new bonds, except such as would be accepted by the holders of the old bonds, and providing that holders of the old bonds should pay the premium of $\frac{5}{16}$ per cent. On July 1, 1886, John Lloyd presented his bonds to the amount of $103,600, but, to receive a like amount of the new bonds, he was obliged to pay to the city the sum of $323.75, as evidenced by the following receipt:

ALTOONA, PA., July 1, 1886.

Received of John Lloyd, for himself and as agent for the Altoona Gas Company, W. H. Rollin, W. D. Couch, T. B. Patton, S. M. Hunter and others, the sum of three hundred and twenty-three dollars and seventy-five cents ($323.75), the same having been paid under protest by the said John Lloyd, it being the five sixteenths premium on $103,600 old bonds exchanged for new bonds of the funded loan of Altoona city, said sum of three hundred and twenty-three dollars and seventy-five cents ($323.75) to be repaid to the said John Lloyd if it is adjudged by the courts of Pennsylvania that the said city had no legal right to exact premiums from old bondholders, said John Lloyd reserving the right to bring suit.

J. E. WINN, City Treas.

This suit was then brought to recover back the sum so paid.

At the close of the testimony, the defendant requested the court to charge:

1. The city of Altoona had the right to redeem all outstanding bonds, amounting in the aggregate to $409,000, on or before July 1, 1886, in accordance with the contract as set out in the several issues of bonds, said bonds "being redeemable at the pleasure of the city of Altoona," and payable as follows: first issue, 1896; second issue, 1903; and third issue, 1911.[1]

2. There can be no recovery in this action, because the declaration contains only the ordinary common counts, and does not set out any statement of plaintiff's demand, as required by the act of assembly of May 25, 1887.[2]

The court, DEAN, P. J., directed the jury to return a verdict for the plaintiff for the amount claimed, with interest, subject to the opinion of the court upon the questions of law raised upon the foregoing points. The jury returned a verdict for the plaintiff for $357.19.

Opinion of Court below.

A motion for judgment for the plaintiff, upon the verdict, having been argued, on July 27, 1889, the following opinion was filed, DEAN, P. J.:

Defendant's counsel asked us to instruct the jury that, under the undisputed evidence, the city of Altoona had the right to redeem all outstanding bonds, amounting in the aggregate to $409,000, on or before July 1, 1886, in accordance with the contract as set out in the bonds, said bonds being redeemable "at the pleasure of the city of Altoona," payable as follows: first issue, 1896; second issue, 1903; third issue, 1911.

The contract as set out in the bonds does give the city the right to redeem them at pleasure, in United States treasury notes, or any other money or currency which the United States have or shall declare lawful money; that is, the contract gave the city the right to pay the bonds at any time before maturity in money.

The city had no money, from the ordinary sources of revenue, to pay the bondholders; to raise such an amount recourse must be had to a new loan. As all the outstanding bonds were at a much higher rate of interest than money was worth—some of them being $7\frac{3}{10}$ per cent—it was highly proper to refund these loans by one bearing a lower rate of interest. The city resolved to make a new loan and secure it by bonds bearing four per cent interest. Under authority of the act of assembly of April 14, 1881, P. L. 10, without which the new loan could not have been contracted, the city council, by ordinance following strictly the provisions of the act, invoked the benefits it was designed to confer. I refer to the ordinance of May 26, 1886, and called Ordinance 102. It provided that all bonds issued should conform to the provisions of the act of April 14, 1881.

It will be noticed, the city was not calling in bonds and paying them off out of money in the city treasury; it was contracting a new loan for the purpose of relieving itself from the heavier burden of the old one, an act it could not perform without legislative authority; that authority it found in the act of 1881. But when the city invoked the benefit of that act it was bound to follow strictly its provisions.

The act contains but two sections. The first authorizes the issue of new bonds to take up outstanding ones, at a rate of interest not exceeding six per cent, principal payable at a time

Opinion of Court below.

not exceeding twenty years; the whole amount not to exceed the aggregate amount of outstanding bonds to be redeemed.

Then comes the second section, which enacts as follows:

"That the holders of any bonds or evidences of indebtedness as aforesaid, which may be matured or payable, or which may be payable or redeemable at the option of any county, city, . . . . borough, municipality or school district, . . . . shall first have the right to surrender said bonds and receive bonds, issued under the provisions of this act, in like amount in lieu thereof, and notice shall be given of the right of the holder of such bonds to surrender the same and accept bonds issued under this act, by publication for three weeks . . . . . before any bonds shall be sold under the first section of this act."

The city did give the notice to holders of old bonds as required; the plaintiff notified the finance committee within the time prescribed by the notice that he was the holder of $103,600 of the old bonds and desired to exchange them for a like amount of the new issue; on the day fixed by the city he carried his bonds to them to be exchanged; the city refused, on the ground that they had been offered by a proposed purchaser a premium of $\frac{5}{16}$ of one per cent for the whole issue, and unless plaintiff paid this premium he should not, as provided by the act of assembly, "surrender his old bonds and receive a like amount of new bonds in lieu thereof." The plaintiff under protest, to effect the exchange and obtain the new bonds, paid the premium demanded, the amount of this verdict, $357.19, including interest, the principal sum being $323.75.

I do not think the city, under the law by authority of which they acted, had a right to demand from any holder of an old bond a premium before permitting an exchange. Before any bonds of the new issue could be sold, an opportunity to exchange old bonds for new was to be given to holders of all bonds; not by paying a premium, but by accepting a like amount of new bonds in lieu thereof.

The argument of the counsel for the city as to the unreasonableness of this provision is not without force, and financially it probably operated to the injury of the city; but the intent of the law is so manifest, from its express words, that we must carry out that intent in this controversy. The city had no right to demand $323.75 from the plaintiff. He had no right

to pay that sum before receiving his new bonds. The defendant's first point is therefore denied.

As to the second point, although the narr does not set out specifically the nature of plaintiff's claim, as disclosed by the proof, the defendant could at any time have had, by notice, a more particular statement under the rules of court. There was no such variance between the proof and the averments as is fatal. The second point is denied.

As to the point urged orally and noticed in the charge, that plaintiff's notice to the finance committee of the amount of his holdings and desire to exchange, was not notice to the city, I am of opinion that he did all that could reasonably be required to signify his willingness to exchange and to give the city knowledge of his rights.

Let judgment be entered on the verdict for plaintiff, on payment of jury fee.

—Judgment for the plaintiff having been entered on the verdict, the defendant took this appeal, assigning for error:

1, 2. The answers to defendant's points.[1][2]

3, 4. The direction to find in favor of the plaintiff and the order entering judgment for the plaintiff on the points reserved.

*Mr. A. V. Dively*, for the appellant.

Counsel cited: (1) Act of April 14, 1881, P. L. 10; § 20, clause 42, act of May 23, 1874, P. L. 244. (2) Section 3, act of May 25, 1887, P. L. 271.

*Mr. William M. Beyer* (with him *Mr. Aug. S. Landis*), for the appellee.

PER CURIAM:

We affirm this judgment upon the opinion of the court below upon the reserved point.

It is proper to observe that no point was made as to the payment by the plaintiff to the city being voluntary.

Judgment affirmed.